## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JORDAN ECK,** *et al.* | **: CIVIL ACTION** |
| | **:** |
| **v.** | **: NO. 19-1873** |
| | **:** |
| **OLEY VALLEY SCHOOL DISTRICT,** | **:** |
| *et al* | **:** |

## MEMORANDUM

**KEARNEY, J.**                                                                         **August 15, 2019**

We now turn to ongoing drama in the Oley Valley high school. This he said-she said drama escalated into a constitutional issue when the public high school's music director, school district superintendent, and high school principal suspended or removed the drama club president and two other student-actors shortly after they (and others) expressed concerns with the music director's leadership to the School Board. Much chit-chat, closed meetings, hurt feelings, and insults immediately followed. Within a couple days, the school district superintendent and high school principal suspended the drama club president and one of his friends for insubordination. The third friend apparently remained in school. But following the play's closing night after-party, the music director enlisted three other adults to remove the third friend from the school gymnasium. The three students sued the school district, superintendent, principal, and music director. The defendants seek to dismiss part of the students' claims. Alas, the drama continues as we cannot dismiss the First or Fourteenth Amendment claims based on allegations we must assume are true. We dismiss the claims against the individual school officials with no alleged involvement in the retaliatory conduct or in their official capacity. The students also fail to plead facts reaching the egregious level of conduct necessary for an intentional infliction of emotional distress claim.

**I.    Alleged facts.**

Students Jordan Eck and Haley Hartline joined their high school drama club at Oley Valley High School.[1] At some point before 2019, Student Eck became president of the drama club.[2] In early 2019, the high school's music director Stacey Lyons cast Students Eck and Hartline in the upcoming spring play.[3]

At some point in planning the Spring 2019 play, Students Eck and Hartline and their parents raised concerns to school administrators about Music Director Lyons's direction.[4] The school administrators refused to respond to these concerns.[5] Student Eck planned to raise his concerns about Music Director Lyons at a March 20, 2019 School Board meeting.[6] Music Director Lyons learned of Student Eck's plans to tell the School Board of his concerns.[7] The day before the meeting, with school superintendent Dr. Tracy Shank's approval, Music Director Lyons emailed the drama club parents representing Student Eck and his mother caused problems for the play and Student Eck, as president of the drama club, planned to speak up against Music Director Lyons at the March 20, 2019 School Board meeting.[8] Music Director Lyons claimed Student Eck's plans risked "destroying the school show" and Student Eck, as drama club president, wanted "to have the school show done away with completely."[9] Music Director Lyons's email to the students and parents also represented Student Eck "had expressed dangerous and violent tendencies toward his classmates and . . . his violent tendencies had gotten so bad that 'the police were called in.'"[10]

Shortly before the School Board meeting, Music Director Lyons allowed students in play rehearsal to leave early as they planned to speak positively about her at the meeting.[11] The School Board announced at the outset of its meeting it would not allow "character assassination" of Music Director Lyons and would only tolerate positive comments about her.[12] The School Board also warned speakers not to use names.[13] Students Eck, Hartline, and Vincent Ferrizzi—another cast

member—and several parents and alumni spoke out against Music Director Lyons specifically raising concerns about her leadership of the school play.[14]  Other students spoke in favor of her.[15] The School Board's restrictions "severely curtailed [Students Eck, Hartline, and Ferrizzi's] ability to speak their viewpoints about the situation as it had developed in regards to the school show."[16]

After the School Board meeting, students who spoke positively about Music Director Lyons returned to play rehearsal.[17] Music Director Lyons locked the doors and asked the students what people said about her at the meeting.[18] Music Director Lyons then unlocked the doors and Students Eck, Hartline, and Ferrizzi returned to rehearsal.[19] Student Eck asked to privately speak with Music Director Lyons.[20] Music Director Lyons brought school secretary Maria Jones and staff member Ms. Hartenstine to stand with her since she was "uncomfortable with speaking with [Student Eck] privately."[21] Music Director Lyons and Ms. Hartenstine occasionally raised their voices during the conversation but no one made moves toward each other.[22] Student Eck left the conversation believing Music Director Lyons and he would finish the show with "mutual respect."[23]

The next day, Superintendent Shank and the high school principal Christopher Becker met with Student Eck.[24] Superintendent Shank and Principal Becker suspended Student Eck for "insubordination" for threatening Ms. Hartenstine the day before.[25] Ms. Hartenstine told Superintendent Shank and Principal Becker Student Eck "lunged at her."[26] Superintendent Shank and Principal Becker did not allow Student Eck to call or cross-examine witnesses during the meeting.[27] Superintendent Shank and Principal Becker suspended Student Eck for three days and removed him both from the drama club president role and from the play.[28]

3

The same day, Superintendent Shank told the other cast members they could no longer discuss Music Director Lyons's leadership.[29] He said students could "leave right now" if they had a problem with his directive.[30]

Student Hartline quit the play while Superintendent Shank spoke.[31] Several days later, the school suspended Student Hartline for insubordination.[32] The school issued Students Eck and Hartline Level Three suspensions for insubordination.[33] The Oley Valley High School Student Handbook does not include "insubordination" as a Level Three violation.[34]

During the after-party following the play's last performance on April 13, 2019, Music Director Lyons told each student something positive about the student's performance in front of the entire cast.[35] But she told Student Ferrizzi she "would never forgive him for what he had said about her at the School Board Meeting" and she "expected him to 'grow' from the 'mistakes' he had made at the School Board Meeting."[36] Music Director Lyons allowed another student to speak negatively about Students Eck, Hartline, and Ferrizzi with profanity.[37] After the party, Music Director Lyons called Student Ferrizzi into the gymnasium and told him she "had spoken with [Superintendent] Shank, and that they had agreed that it was 'best for everyone' if he was removed from the premises."[38] Three unidentified parents walked Student Ferrizzi off the premises.[39]

**II. Analysis.[40]**

Students Eck, Hartline, and Ferrizzi sued the Oley Valley School District and Superintendent Shank, Principal Becker, and Music Director Lyons in their individual and official capacities for First Amendment retaliation and due process violations under the Fourteenth Amendment.[41] They allege Defendants suspended or removed them from school without due process because they expressed concerns about Music Director Lyons's leadership of the school play before and at the March 20, 2019 School Board meeting. They sue Superintendent Shank for

4

failing to supervise the protection of their First Amendment rights. Student Eck sues Music Director Lyons for defamation. Students Eck, Hartline, and Ferrizzi sue Music Director Lyons for intentional infliction of emotional distress.

Defendants move to dismiss Students' First Amendment retaliation claims for failure to state a claim. Superintendent Shank, Principal Becker, and Music Director Lyons move to dismiss Students' official capacity claims against them for First Amendment retaliation and Fourteenth Amendment due process violations as duplicative of Students' claims against the School District. Music Director Lyons moves to dismiss Students' claims for intentional infliction of emotional distress.

## A.    Students state a claim for First Amendment retaliation.

The School District, Superintendent Shank, Principal Becker, and Music Director Lyons move to dismiss the First Amendment retaliation claims arguing Students (1) fail to plead constitutionally protected conduct and (2) fail to plead a "causal link" between the alleged speech and the punishment.

To state a First Amendment retaliation claim, Students must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."[42]

Defendants argue Students Eck, Hartline, and Ferrizzi fail to sufficiently identify the speech to determine whether it is constitutionally protected. Defendants argue less protection is afforded student speech and, without knowing what the Students said at the March 20, 2019 School Board meeting, their speech "may have been the type of student speech that is not protected, i.e. speech that would substantially disrupt school operations or interfere with the right of others."[43]

5

Defendants further argue it is "unclear" from the allegations of the Amended Complaint "what [Students] said would even possibly be anything that would possibly engender retaliatory actions by Defendants given the alleged restrictions in place at the board meeting."[44] We disagree.

The First Amendment provides "Congress shall make no law . . . abridging the freedom of speech."[45] The First Amendment's Free Speech Clause is applicable to the States under the Due Process Clause of the Fourteenth Amendment.[46] "A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more."[47]

"[A]s a general matter, the First Amendment means [the] government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."[48] But "the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings."[49] While the First Amendment "unquestionably protects the free speech rights of students in public school," the exercise of such rights "has to be 'applied in light of the special characteristics of the school environment.'"[50]

The Supreme Court's holding in *Tinker* "sets the baseline for what student speech is protected: anything that does not, or in the view of reasonable school officials, will not cause material and substantial disruption at school."[51] In *Tinker*, a high school suspended a group of students wearing black armbands to protest the Vietnam War.[52] The students sued the high school for violating their First Amendment right to free speech.[53] The district court dismissed their case and the court of appeals affirmed.[54] The Supreme Court reversed explaining students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."[55] To suppress student speech, the Court held a school must show more than "a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint."[56] Rather the

6

school must show student's speech would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school."[57] The school failed to show the students' speech disrupted school work. While some other students threatened the protesting students with violence off campus, no students threatened them on school property.[58]

After *Tinker*, the Supreme Court created exceptions to the baseline rule. Schools may punish "offensively lewd and indecent speech."[59] Schools may also "exercis[e] editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns."[60] And schools "may take steps to safeguard those entrusted to their care from speech that can reasonably be regarded as encouraging illegal drug use."[61] Aside from these three exceptions, the Supreme Court's baseline rule from *Tinker* applies: the First Amendment protects student speech which, "in the view of reasonable school officials, will not cause material and substantial disruption at school."[62]

Defendants contend Students "merely allege that they 'spoke out'" against Music Director Lyons at the March 20, 2019 School Board Meeting, citing paragraph 91 of the Amended Complaint. Considering the entire Amended Complaint, Students allege:

• Students Eck and Hartline, and parents, expressed concerns about Music Director Lyons's leadership of the play, raised those concerns with other students, and ultimately school administration at the Board Meeting.[63]

• Before the March 20, 2019 School Board Meeting, Student Eck expressed interest in attending the meeting and speaking about his concerns regarding Music Director Lyons.[64]

• Students Eck, Hartline, and Ferrizzi went to the school board meeting and, along with parents and alumni, "spoke against" Music Director Lyons.[65]

7

• The School Board announced at the outset of the meeting it would not allow "character assassination" of Music Director Lyons and only "positive comments about her and her character would be tolerated."[66]

• Students spoke against Music Director Lyons but were "severely curtailed in their ability to speak their viewpoints about the situation as it had developed in regards to the school show."[67]

• Students spoke out against Music Director Lyons.[68]

Accepting as true these allegations and all reasonable inferences drawn from them, and construed in the light most favorable to Students, the Students expressed concerns about Music Director Lyons's leadership with regard to the school play before and at the March 20, 2019 School Board Meeting; Students went to the March 20, 2019 School Board Meeting to air those concerns; the School Board limited the Students to only "positive comments" about Music Director Lyons's character; and, Students, although curtailed in what they could say, made comments about "their viewpoints about the situation as it had developed in regards to the school show."[69] Far from some amorphous comments, Students expressed concerns about Music Director Lyons's leadership of the school play. These are sufficient to satisfy the first element of the claim for First Amendment retaliation.

Defendants cite *Jackson v. Dallas School District* arguing Students fail to allege protected conduct.[70] In *Jackson*, a school district fired the varsity football coach and refused to hire him back.[71] The coach alleged the school district violated his First Amendment rights. The district court dismissed the coach's First Amendment claim explaining the coach merely concluded he engaged in "constitutionally protected" conduct.[72] But Students Eck, Hartline, and Ferrizzi plead more than legal conclusions; they expressed their concerns about Music Director Lyons's leadership of the

8

school play in a manner which Music Director Lyons tried to deter beforehand. The district court in *Jackson* also explained the coach spoke as a public official on matters of public concern, necessitating a different First Amendment analysis.[73] Students are not public officials. Students regardless plead more than legal conclusions.

Defendants argue Students cannot bring a First Amendment claim when a school's guidelines provide a punishment for speech.[74] In *Blasi*, a school district suspended a dad from one school basketball game after the dad complained at a game about the lack of foul calls.[75] In the suspension letter, the school district cited the spectator guidelines—including the provision the dad violated—and explained before the basketball season, the dad had signed an acknowledgement form affirming he read and understood the guidelines.[76] The district court in *Blasi* dismissed the dad's First Amendment claims explaining the school district imposed punishment under the guidelines.[77] But Students allege although Defendants cited Students Eck and Hartline for "insubordination" and issued Level Three suspensions, the Student Handbook does not include "insubordination" as a Level Three violation.[78] The district court's holding in *Blasi* is inapposite. Students plead constitutionally protected conduct.

Defendants next argue Students fail to plead a causal link between their speech and the retaliatory conduct. To establish a causal link, Students must plead "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[79] Our Court of Appeals explained "unusually suggestive" temporal proximity means "within a few days but no longer than a month."[80]

Defendants allegedly suspended Students Eck and Hartline less than a day after they spoke out against Music Director Lyons.[81] Music Director Lyons removed Student Ferrizzi from school

9

premises a little over three weeks after he spoke at the School Board Meeting and the same day Music Director Lyons told Student Ferrizzi she "would never forgive him for what he had said about her at the School Board Meeting," allowing an inference of causation.[82] Students allege an unusually suggestive temporal proximity to establish a causal link between their protected conduct and the retaliatory conduct.

Students state a claim for First Amendment retaliation.

**B.** **Student Ferrizzi fails to allege personal involvement of Principal Becker and Student Eck fails to allege personal involvement of Music Director Lyons in their First Amendment retaliation claims.**

Principal Becker argues Student Ferrizzi fails to allege his personal involvement in retaliating against him. Music Director Lyons argues Student Eck fails to allege personal involvement in retaliatory conduct against him. We agree with Principal Becker and Music Director Lyons.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."[83] Students can show personal involvement with allegations of "personal direction or of actual knowledge and acquiescence."[84] Each individual defendant must have personal involvement in the alleged wrongdoing.[85]

Student Ferrizzi fails to allege Principal Becker's personal involvement in Student Ferrizzi's removal. He only alleges Music Director Lyons told Student Ferrizzi she "had spoken with [Superintendent] Shank, and that they had agreed that it was 'best for everyone' if he was removed from the premises."[86] Three unidentified parents then walked Student Ferrizzi off school property.[87] Student Ferrizzi argues because Music Director Lyons removed him with Superintendent Shanks's approval, and because Principal Becker and Superintendent Shank

10

suspended Students Eck and Hartline, we can infer Principal Becker's personal involvement with Student Ferrizzi's removal. We cannot make this leap. He fails to allege for example Principal Becker's presence when Music Director Lyons spoke with Superintendent Shank about Student Ferrizzi's removal. Student Ferrizzi fails to allege facts showing Principal Becker's personal direction or knowledge and acquiescence to Student Ferrizzi's removal.[88]

Student Eck fails to allege Music Director Lyons's personal involvement in his suspension. Only Superintendent Shank and Principal Becker attended the suspension meeting.[89] Superintendent Shank and Principal Becker suspended Student Eck for his conduct toward Ms. Hartenstine. Student Eck argues Music Director Lyons's conduct forms the basis of his claim. But he fails to allege Music Director Lyons's involvement in the alleged wrongdoing toward him—his suspension. Student Eck wants us to infer Music Director Lyons's personal involvement, but he pleads no facts from which we can infer she directed or acquiesced to Student Eck's suspension.

We dismiss (1) Student Eck's First Amendment retaliation claim against Music Director Lyons and (2) Student Ferrizzi's First Amendment retaliation claim against Principal Becker. We allow Students Eck and Ferrizzi to amend their complaint if they can plead personal involvement of Music Director Lyons and Principal Becker respectively consistent with Federal Rule of Civil Procedure 11.

### C. We dismiss Students' official capacity claims for First Amendment retaliation and Fourteenth Amendment due process violations against Superintendent Shank, Principal Becker, and Music Director Lyons.

Superintendent Shank, Principal Becker, and Music Director Lyons argue we should dismiss Students' official capacity claims against them for First Amendment retaliation and Fourteenth Amendment due process violations as duplicative of their claims against the School District. We agree. Our Supreme Court explained "a suit against a state official in his or her official

11

capacity is not a suit against the official but rather is a suit against the official's office."[90] "Because claims against a municipal official in his or her official capacity duplicate claims against the municipality itself, courts dismiss official capacity claims as redundant when a plaintiff brings identical claims against the city directly."[91] Students sue the School District and individual Defendants in their individual and official capacities for First Amendment retaliation and Fourteenth Amendment due process violations.[92] Students' claims against the individuals in their official capacities are redundant of their claims against the School District.

Students argue courts in our district denied motions to dismiss official capacity claims as redundant explaining "[a] claim that is redundant is not necessarily invalid."[93] But our Court of Appeals affirmed dismissal of official capacity claims as redundant citing our Supreme Court's holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity[.]"[94] We follow our Court of Appeals' guidance and dismiss official capacity claims for First Amendment retaliation and Fourteenth Amendment due process violations against Superintendent Shank, Principal Becker, and Music Director Lyons as redundant of Students' claims against the School District.[95]

**D.    Students fail to state a claim for intentional infliction of emotional distress against Music Director Lyons because they fail to allege extreme and outrageous conduct.**

Music Director Lyons moves to dismiss Students' claims for intentional infliction of emotional distress arguing they fail to allege outrageous and extreme conduct.[96] To state a claim for intentional infliction of emotional distress under Pennsylvania law, Students must plead four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe."[97] Also, "to

12

state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, plaintiffs must allege physical injury."[98]

To satisfy the first element, conduct must be "extreme and outrageous" defined by Pennsylvania law to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."[99] "It is for the court to determine in the first instance whether the conduct is extreme and outrageous, such that recovery may be permitted."[100]

Students allege Music Director Lyons, as a professional educator, held a position of trust and authority over them and she used the position to bully them by "demeaning, intimidating, and humiliating them in the presence of their peers and by encouraging their peers to engage in demeaning, intimidating, and humiliating behavior towards [Students], including the use of expletives to describe [Students]."[101] Students further allege Music Director Lyons "created a threatening environment of fear and intimidation towards [them], in violation of what students are not permitted to do under [the School District's bullying policy]."[102] Students allege Music Director Lyons "further bullied [them] by making false statements, and encouraging others to make false statements, about [them] having violent tendencies or posing a threat to the health, safety or welfare of [Music Director] Lyons, the school community, or both" and Music Director Lyons "timed her allegations, resulting in the suspensions of [Students] to purposefully deprive [them] of their involvement in the school play and related drama club events."[103]

Accepting these allegations as true as we must at the motion to dismiss stage, they do not rise to the level of "extreme and outrageous" conduct sufficient to support a claim for intentional infliction of emotional distress. Under Pennsylvania law, extreme and outrageous conduct is found "only in the most egregious situations, such as mishandling of a corpse, reckless diagnosis of a

13

fatal disease, and having sexual contact with young children."[104] Students' allegations do not rise to the level of "extreme and outrageous" under Pennsylvania law, and we grant Music Director Lyons's motion to dismiss this claim against her.[105]

Students argue they need not show outrageousness when a "special relationship" exists between the parties.[106] They cite the Restatement (Second) of Torts explaining "[i]t is only where there is a special relation between the parties, as stated in § 48, that there may be recovery for insults not amounting to extreme outrage."[107] But Section 48 does not include the student-teacher relationship as an exception. Students, conceding they propose a "novel theory," ask we predict the Pennsylvania Supreme Court would recognize the student-teacher relationship constitutes a "special relationship" under Section 48.[108] We will not do so as we have no evidence the Pennsylvania Supreme Court would reach this conclusion. Courts in our Circuit retain the outrageousness requirement for students' intentional infliction of emotional distress claims against teachers.[109] We do not deviate from the weight of authority in our Circuit.

Students also cite Section 320 of the Restatement applying to "teachers or other persons in charge of a public school."[110] But Section 320 concerns special relationships imposing a duty to control another's conduct, not a special relationship obviating the need to show outrageousness in an intentional infliction of emotional distress claim.[111] We do not remove the outrageousness requirement for Students' intentional infliction of emotional distress claims.

Students argue even assuming the outrageousness element applies, a teacher abusing a student satisfies the outrageousness element citing *Vicky M. v. Northeastern Educational Intermediate Unit*.[112] In *Vicky*, parents brought intentional infliction of emotional distress claims against a teacher for abusing special education students.[113] The court found the record showed "physically and emotionally abusive actions, taken by a teacher against often non-verbal autistic

14

children."[114] The court found evidence of "physical blows," "restraints," "depr[i]vation of communications devices," "withholding of food," and "verbal abuse."[115] The students suffered from post-traumatic stress disorder as a result of the treatment.[116] Students' allegations of insults and suspension do not rise to the level of mental and physical torture in *Vicky*.[117]

Students argue they allege a continuing course of conduct and the Pennsylvania Superior Court recognized intentional infliction of emotional distress claims when a plaintiff alleges "continuous malicious actions."[118] But the Pennsylvania Superior Court in *Dawson* did not remove the outrageousness element from the tort. The court merely held a plaintiff cannot bring an intentional infliction of emotional distress claim alleging a defendant "hurl[ed] an epithet" during a disagreement.[119] Even alleging a continuing course of conduct, Students fail to satisfy the outrageousness element.

Students argue the Pennsylvania Supreme Court in *Hoy v. Angelone* did not adopt a "physical injury" requirement for an intentional infliction of emotional distress claim.[120] But the court in *Hoy* only determined whether the Pennsylvania Superior Court improperly added a "retaliation" element to the tort.[121] The Pennsylvania Supreme Court in *Hoy* did not, as Students suggest, refuse to adopt a "physical harm" requirement.

We dismiss Students' intentional infliction of emotional distress claims against Music Director Lyons. We grant Students leave to amend their complaint to adequately state a claim if they can do so in good faith consistent with Federal Rule of Civil Procedure 11.

**III. Conclusion.**

In an accompanying Order, we deny in part and grant in part Defendants' partial Motion to dismiss. We deny the Motion to dismiss Students' First Amendment retaliation claims, except we grant (1) Music Director Lyons's motion to dismiss Student Eck's First Amendment retaliation

15

claim against her and (2) Principal Becker's motion to dismiss Student Ferrizzi's First Amendment retaliation claim against him. We grant the motion to dismiss Students' official capacity claims against Superintendent Shank, Principal Becker, and Music Director Lyons for First Amendment retaliation and Fourteenth Amendment due process violations. We grant Music Director Lyons's motion to dismiss Students' intentional infliction of emotional distress claims.

We appreciate our limited scope of review today requires we credit all the plead facts. We expect there is a second act and discovery will allow us to more fully evaluate both sides of this drama which may soon open in a federal courtroom.

---

[1] ECF Doc. No. 10 ¶ 15.

[2] *Id.* at ¶ 16.

[3] *Id.* at ¶ 17.

[4] *Id.* at ¶ 18.

[5] *Id.*

[6] *Id.* at ¶ 19.

[7] *Id.* at ¶ 20.

[8] *Id.*

[9] *Id.* at ¶ 21.

[10] *Id.* at ¶ 22.

[11] *Id.* at ¶ 25.

[12] *Id.* at ¶ 27.

[13] *Id.* at ¶ 28.

[14] *Id.* at ¶ 18.

[15] *Id.* at ¶ 26.

[16] *Id.* at ¶ 29.

[17] *Id.* at ¶ 31.

[18] *Id.* at ¶ 33.

[19] *Id.* at ¶¶ 34-35.

[20] *Id.* at ¶ 37.

[21] *Id.* at ¶ 38.

[22] *Id.* at ¶ 40.

[23] *Id.* at ¶ 44.

[24] *Id.* at ¶ 45. In the caption of their Amended Complaint, Students refer to the principal as "Christopher M. Baker." *Id.* at p. 1. This defendant's name is "Christopher M. Becker." We will amend the caption accordingly.

[25] *Id.* at ¶ 47.

[26] *Id.* at ¶ 48.

[27] *Id.* at ¶ 50.

[28] *Id.* at ¶ 54.

[29] *Id.* at ¶ 58.

[30] *Id.* at ¶¶ 58-59.

[31] *Id.* at ¶¶ 60-61.

[32] *Id.* at ¶ 63.

[33] *Id.* at ¶ 64.

[34] *Id.* at ¶¶ 65-67.

[35] *Id.* at ¶ 69.

[36] *Id.* at ¶ 70.

[37] *Id.* at ¶ 71.

[38] *Id.* at ¶ 74.

[39] *Id.* at ¶ 75.

[40] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[41] We do not know whether the three students in this case are minors. Minors lack the capacity to sue in federal court. Fed. R. Civ. P. 17(c).

[42] *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

[43] ECF Doc. No. 12-1, at p. 12.

[44] *Id.* at p. 12.

[45] U.S. CONST. amend. I.

[46] *Packingham v. North Carolina*, 137 S. Ct. 1730, 1733 (2017).

[47] *Id.* at 1735.

[48] *B.H. ex rel. Hawk v. East Area Sch. Dist.*, 725 F.3d 293, 302 (3d Cir. 2013) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)).

[49] *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986).

[50] *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 926 (3d Cir. 2011) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)).

[51] *B.L. by and through Levy v. Mahanoy Area Sch. Dist.*, 376 F. Supp. 3d 429, 435 (M.D. Pa. 2019), *appeal filed*, No. 19-1842 (3d Cir. Apr. 16, 2019).

[52] *Tinker*, 393 U.S. at 504.

[53] *Id.*

[54] *Id.* at 505.

[55] *Id.* at 506.

[56] *Id.* at 509.

[57] *Id.* at 505.

[58] *Id.* at 508.

[59] *Fraser*, 478 U.S. at 685.

[60] *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988) (whether school could exercise editorial control over contents of a high school newspaper produced under school's journalism class).

[61] *Morse v. Frederick*, 551 U.S. 393, 397 (2007).

[62] *B.L.*, 376 F. Supp. 3d at 435.

[63] ECF Doc. No. 10 ¶ 18.

[64] *Id.* at ¶ 19.

[65] *Id.* at ¶ 26.

[66] *Id.* at ¶ 27.

[67] *Id.* at ¶ 29.

[68] *Id.* at ¶ 91.

[69] *Id.* at ¶ 29.

[70] *Jackson v. Dallas Sch. Dist.*, 954 F. Supp. 2d 304 (M.D. Pa. 2013).

[71] *Id.* at 308.

[72] *Id.* at 311.

[73] *Id.* at 309 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)).

[74] *Blasi v. Pen Argyl Area Sch. Dist.*, No. 10-6814, 2011 WL 4528313, at *1 (E.D. Pa. Sept. 30, 2011), *aff'd*, 512 F. App'x 173 (3d Cir. 2013).

[75] *Id.*

[76] *Id.*

[77] *Id.* at *9.

[78] ECF Doc. No. 10 ¶¶ 65-67.

[79] *Breslin v. Dickinson Twp.*, No. 09-1396, 2012 WL 7177278, at *15 (M.D. Pa. Mar. 23, 2012), *report and recommendation adopted*, No. 09-1396, 2013 WL 654491 (M.D. Pa. Feb. 21, 2013) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

[80] *Yu v. U.S. Dep't of Veterans Affairs*, 528 F. App'x 181, 185 (3d Cir. 2013) (citing *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004)).

[81] ECF Doc. No. 10 ¶ 91.

[82] *Id.* at ¶ 70.

[83] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)).

[84] *Id.*; *see also Turney v. Attorney Gen. for U.S. ex rel. Sec'y of Labor*, 502 F. App'x 180, 183 (3d Cir. 2012) ("Turney did not allege that Secretary Solis was personally involved in or had knowledge of the suspension of his workers' compensation benefits. Without evidence of personal involvement or knowledge of the denied requests, Turney's claims against Secretary Solis fail.").

[85] *McMillan v. Lycoming Cty. Prison*, No. 13-1746, 2013 WL 6002228, at *3 (M.D. Pa. Nov. 12, 2013) (quoting *Rode*, 845 F.2d at 1207).

[86] ECF Doc. No. 10 ¶ 74.

[87] *Id.* at ¶ 75.

[88] In their response to the motion to dismiss, Students allege a conspiracy amongst the individual Defendants. ECF Doc. No. 17, at p. 10. Students did not plead a conspiracy for their First Amendment claims. Students may attempt to plead a conspiracy for their Fourteenth Amendment claims. ECF Doc. No. 10 ¶ 102. Defendants do not move to dismiss the Fourteenth Amendment claims.

[89] ECF Doc. No. 10 ¶ 45.

[90] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

[91] *Riveros-Sanchez v. City of Easton*, No. 19-545, 2019 WL 3334663, at *4 (E.D. Pa. July 25, 2019) (citing *Palmer v. City of Scranton*, No. 17-2369, 2018 WL 3207323, at *2 (M.D. Pa. June 29, 2018)).

[92] ECF Doc. No. 10, at pp. 14-15.

[93] *Conner v. Borough of Eddystone, Penn.*, No. 14-06934, 2015 WL 1021363, at *2 (E.D. Pa. Mar. 6, 2015).

[94] *Snell v. City Of York*, 564 F.3d 659, 664 (3d Cir. 2009) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

[95] We appreciate Judge Pappert's hesitation to dismiss official capacity claims. But we see no reason to defer ruling on Students' official capacity claims since the individual defendants remain in the case in their personal capacity. And under Federal Rule of Civil Procedure 15, Students may liberally amend later if the remaining individual capacity claims are dismissed and there is merit in the alternative capacity claim.

[96] ECF Doc. No. 12-1, at p. 16.

[97] *Miller v. Comcast*, 724 F. App'x 181, 182 (3d Cir. 2018) (quoting *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 914 (3d Cir. 1982)).

[98] *Martin v. Comunale*, No. 03-06793, 2006 WL 208645, at *12 (E.D. Pa. Jan. 18, 2006) (citing *Rolla v. Westmoreland Health Sys.*, 651 A.2d 160, 163 (Pa. Super. Ct. 1994); *Hart v. O'Malley*, 647 A.2d 542, 554 (Pa. Super. Ct. 1994), *aff'd*, 676 A.2d 222 (Pa. 1996) ("[I]t is clear that in Pennsylvania, in order to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiffs must allege physical injury.").

[99] *Cheney v. Daily News L.P.*, 654 F. App'x 578, 583 (3d Cir. 2016) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)).

[100] *Id.* (citing *Small v. Juniata Coll.*, 682 A.2d 350, 355 (Pa. Super. Ct. 1996)).

[101] ECF Doc. No. 10 ¶ 130.

[102] *Id.* at ¶ 131.

[103] *Id.*

[104] *Cheney*, 654 F. App'x at 583-84 (citing *Salerno v. Phila. Newspapers, Inc.*, 546 A.2d 1168, 1172 (Pa. Super. Ct. 1988)).

[105] *See L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 924 (M.D. Pa. 2015), *aff'd*, 666 F. App'x 213 (3d Cir. 2016) (dismissing intentional infliction of emotional distress claim as failing to satisfy "outrageousness" element when teacher "verbally abused" eighth-grade student including allegations teacher asked whether student had Tourette's syndrome).

[106] ECF Doc. No. 17, at p. 14.

[107] Restatement (Second) of Torts § 46 (1965).

[108] ECF Doc. No. 17, at p. 15.

[109] *See, e.g., Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 713 (E.D. Pa. 2007) (student alleging ten-month sexual relationship with teacher sufficiently "outrageous"); *Stokley v. Bristol Borough Sch. Dist.*, No. 13-3277, 2013 WL 4787297, at *3 (E.D. Pa. Sept. 9, 2013) (dismissing high school student's intentional infliction of emotional distress claims alleging teachers racially discriminated against him in accusing him of cheating holding allegations failed to satisfy "outrageousness" element); *L.H.*, 130 F. Supp. 3d at 928 (dismissing intentional infliction of emotional distress claims alleging teacher "verbally abused" eighth-grade student holding student failed to show outrageous conduct).

[110] Restatement (Second) of Torts § 320 (1965).

[111] *Id.* § 320 (explaining a person who "takes the custody of another" has a duty "to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him").

[112] 689 F. Supp. 2d 721 (M.D. Pa. 2009).

[113] *Vicky*, 689 F. Supp. 2d at 727.

[114] *Id.* at 739.

[115] *Id.*

[116] *Id.*

[117] Students also argue "false statements by a governmental actor are also sufficiently outrageous, even if no physical manifestation resulted." ECF Doc. No. 17, at p. 16. Students cite an illustration in the Restatement, but the illustration does not stand for as broad a proposition as Students argue. The Restatement reads where conduct is "sufficiently extreme and outrageous there may be liability for the emotional distress alone" without physical harm. Restatement (Second) of Torts § 46 (1965). But the example provides a much different factual scenario than the allegations here. As explained, Students' allegations fail to show outrageous and extreme conduct.

[118] *Dawson v. Zayre Dep't Stores*, 499 A.2d 648, 650 (Pa. Super. Ct. 1985).

22

[119] *Id.*

[120] 720 A.2d 745 (Pa. 1998).

[121] *Hoy*, 720 A.2d at 755.